UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

SNS ONE, INC.  
    Plaintiff

v.                      CIVIL NO. L-10-1592

TODD HAGE  
    Defendant

*******

MEMORANDUM

      This is a breach of contract case. Plaintiff SNS One, Inc. ("SNS One") employed Defendant Todd Hage from July 2008 until April 2010. SNS One is an information technology company, and much of Hage's work was done pursuant to subcontracts between SNS One and Science Applications International Corporation ("SAIC"), which provides information technology services to the Department of the Army (the "Army"). In this case, SAIC, acting as the prime contractor, retained SNS One as a subcontractor.

      Hage's contract with SNS One contained a covenant that prohibited him from associating with any entity that "is the same as, similar to or competitive with [SNS One.]" P.'s Ex. 2. In April 2010, Hage left SNS One and began working for SAIC. SNS filed suit against Hage, alleging that he was in breach of the covenant. Hage responded by moving for summary judgment on the basis that the covenant was facially invalid because it contained no geographical limitation and prohibited Hage from associating with entities other than SNS's competitors. The Court agreed that the covenant was facially invalid, but, as is required by Maryland law, it "blue-penciled" the agreement to apply only to SNS One's competitors. See Docket No. 30.

      Discovery is now complete, and Hage has renewed his Motion for Summary Judgment. Docket No. 45. The Court has carefully reviewed the papers, and no hearing is necessary. See

Local Rule 105.6 (D. Md. 2010). For the reasons stated herein, the Court will GRANT Hage's Motion by separate Order of even date.

## I. Background

There is no dispute as to the material facts, which are as follows.

### A. Hage's Employment History

SNS One employed Hage from July 12, 2008 to April 1, 2010. Hage's official job title was "associate," and his primary duty was to test software developed by on-site programmers at the Department of the Army. Hage's objective was to ensure that the systems did not fail when utilized by Army personnel. From July 2008 through September 2008, Hage worked on the Champion Contract between SAIC and the Army. In September 2008, SNS One reassigned Hage to the Geospatial Research Integration Development and Support ("GRIDS") Contract, which was also between SAIC and the Army.

In March 2010, SAIC terminated SNS One's role on the GRIDS Contract. SAIC then invited Hage to join SAIC and continue on the GRIDS Contract. Hage accepted SAIC's offer, and on March 17, 2010, he sent a letter of resignation to SNS One.[1] His last day of work with SNS One was March 31, 2010, and Hage began working for SAIC on April 1, 2010. As an employee of SAIC, Hage works in the same office and performs exactly the same work that he had performed while working on the GRIDS contract as an employee of SNS One.

---

[1] SNS One offered to reassign Hage to another project, which would have involved auditing so-called "Information Assurance" reports done by other companies for the Government. The new position would also have required Hage to undertake a substantially longer commute. Hage rejected this offer.

### B. The Non-Compete Agreement

Initially, the covenant not-to-compete between SNS One and Hage read as follows:

> During [Hage]'s employment by [SNS One] and for a period of (1) one year after [Hage] ceases to be employed by [SNS One], [Hage] shall not within (1) year directly or indirectly, either for [Hage]'s OWN Account or as a partner, shareholder . . . officer, employee, agent, or otherwise, be employed by, connected with, participate in, consult or otherwise associate with any other business, enterprise, or venture that is the same as, similar to or competitive with [SNS One].

P.'s Ex. B. The covenant was followed by a non-exhaustive example provision:

> By way of example, and not as a limitation, the foregoing shall preclude [Hage] from soliciting business or sales from, or attempting to convert to other services as provided by [SNS One], any customer, client, or account of [SNS One] with which [Hage] has had any contact during the term of employment.

Id.

On August 31, 2010, the Court found that the covenant was overly broad and blue-penciled the agreement. The blue-penciled version bars Hage from working for any of SNS One's competitors. It reads as follows:

> During [Hage]'s employment by [SNS One] and for a period of (1) one year after [Hage] ceases to be employed by [SNS One], [Hage] shall not within (1) year directly or indirectly . . . be employed by, connected with, participate in, consult or otherwise associate with any other business, enterprise, or venture that is ~~the same as, similar to or~~ competitive with [SNS One].

Docket No. 30. The case-law limits blue-penciling to removing offending language, see Fowler v. Printers II, Inc., 598 A.2d 794, 802 (Md. 1991), and the Court added nothing to the agreement set forth above. The Court also declined to consider whether the covenant would pass muster under the facts of the case. The Court's sole holding was that, as amended, the covenant was not facially invalid.

The Court then entered a Scheduling Order to govern discovery. During the course of discovery, SNS One repeatedly refused to name its competitors, prompting

3

Hage to file a motion to compel SNS One to identify companies that it considered to be its competitors. The Court held a hearing on the motion by telephone. During that hearing, the Court pointed out to SNS One the pitfall of not naming its competitors, namely that the Court might draw the inference that the term "competitors" was unreasonably and unenforceably broad. SNS One nevertheless resisted, contending that the universe of competing companies was so large that making an effort to name those competitors would be futile. The Court declined to require SNS One to be more specific, pointing out that SNS One would be bound at summary judgment by its decision.

Discover is now complete, and Hage has renewed his Motion for Summary Judgment. He contends that, under the facts of this case, the covenant is unenforceable. The Court agrees.

## II.     Standard of Review

The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses from proceeding to trial). Nevertheless, in determining whether there is a genuine issue of material fact, the Court views the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987). Hearsay statements or conclusory statements with no

4

evidentiary basis cannot support or defeat a motion for summary judgment. See Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro, 64 F.3d 962, 967 (4th Cir. 1995).

**III.    Analysis**

Hage presents two distinct arguments as to why he is entitled two summary judgment. First, he contends that the covenant is invalid because the phrase "competitive with" is vague and overbroad. In the alternative, he argues that SAIC is not a competitor of SNS One. Because the Court concludes that the covenant is invalid, it need not reach the latter issue.

**A.    Restrictive Covenants under Maryland Law**

A brief summary of the law in Maryland concerning restrictive covenants is as follows. Because they restrict a person's right to work, covenants not-to-compete are generally viewed with caution and read narrowly. See, e.g., Mackintosh v. Brunswick Corp., 215 A.2d 222 (Md. 1965); Silver v. Goldberger, 188 A.2d 155 (Md. 1963); Tawney v. Mutual System of Md., 47 A.2d 372 (Md. 1946). A restrictive covenant is not enforceable under Maryland law unless (i) the employer has a legally protected interest; (ii) the restrictive covenant is "no wider in scope and duration than is reasonably necessary to protect the employer's interest"; (iii) the covenant does not "impose an undue hardship on the employee," and (iv) the covenant does not "violate public policy." Deutsche Post Global Mail, Ltd. v. Conrad, 116 F. App'x 435, 438 (4th Cir. 2004) (citing Silver v. Goldberger, 188 A.2d 155, 158-59 (Md. 1963)). The test used is "whether the particular restraint is reasonable on the specific facts." Ruhl v. F.A. Bartlett Tree Expert Co., 225 A.2d 288 (Md. 1967).[2]

---

[2] The factors for making this inquiry are:

B.     **Application**

Before turning to the factors mentioned above, the Court must address the parties' disagreement concerning the phrase "competitive with." Hage contends that because SNS One's corporate designee could not readily identify its competitors, the phrase is vague, rendering the covenant invalid. In response, SNS One contends that the covenant is valid and applies to any entity "in the same or similar business as Plaintiff." D.'s Opp. 4.

The Court will begin with Hage's argument that the phrase "competitive with" is vague. The Court disagrees. As Hage explained when discussing whether SAIC is a competitor of SNS One, competition is "[t]he struggle for commercial advantage; the effort or action of two or more commercial interests to obtain the same business from third parties." See D.'s Reply 4 (quoting Black's Law Dictionary (9th Ed. 2009)); see also Competition Definition, Oxford English Dictionary, http://www.oed.com/search?searchType=dictionary&q=competition&_searchBtn =Search (last visited June 3, 2011) (defining competition as "'[t]he action of endeavouring to gain what another endeavours to gain at the same time' (Johnson); the striving of two or more for the same object; rivalry"). Thus, a competitor is one who struggles with SNS One for a third party's business.[3]

---

> [W]hether the person sought to be enjoined is an unskilled worker whose services are not unique; whether the covenant is necessary to prevent the solicitation of customers or the use of trade secrets, assigned routes, or private customer lists; whether there is any exploitation of personal contacts between the employee and customer; and, whether enforcement of the clause would impose an undue hardship on the employee or disregard the interests of the public.

Budget Rent A Car of Wash., Inc. v. Raab, 302 A.2d 11, 13 (1973).

[3] The Court's conclusion that the phrase "competitive with" is not vague is borne out by the fact that Hague has not identified any case-law in which the phrase is in dispute. This suggests that courts analyzing restrictive covenants define "competitive with" or "competitor" as described above.

The Court also rejects SNS One's argument that the phrase "competitive with" means "the same as or similar to." SNS One has cited no authority to support this definition. SNS One's position is particularly bewildering in light of the Court's ruling on Hage's first Motion for Summary Judgment. In that opinion, the Court specifically excised the phrase "the same as [or] similar to" from the covenant, reasoning that doing so would render the covenant valid. Docket No. 30, 6.[4]

The Court agrees with Hage that, under the facts of this case, the covenant is overbroad, rendering it more restrictive in scope than necessary. An employee needs firm, solid guidance on what he can and cannot do if he leaves his employer. Here, the Court let the case go forward under the assumption that the blue-penciled language, in the context of SNS One's industry, would afford that guidance. It turns out that the covenant gives no guidance to Hage because SNS One has been unable, and indeed unwilling, to identify its competitors. Thus, Hage and other SNS One employees subject to this restriction have no way knowing what territory is safe and what territory is off limits. This is particularly so because SNS One has gone so far as to argue that the covenant applies to any information technology company.

The case of Intelus Corp. v. Barton, 7 F. Supp. 2d 635, 641 (D. Md. 1998) is instructive on this issue. In Intelus, this Court considered a restrictive covenant between a company that both developed and sold software products, and one of the company's sales' managers. The covenant at issue prohibited former employees from "compet[ing] directly for the customers and accounts of [the employer]." Id. at 639 (emphasis added). The Court found that this language rendered the covenant "narrowly tailor[ed]" and "reasonably related to [the employer's] interest in protecting a loss of business and of good will" because the covenant applied only to direct

---

[4] For the reasons discussed below, the Court also finds that the definition "the same as or similar to" would also render the covenant overbroad.

competitors. Id. at 642. The Court specifically noted that the covenant did not prevent the employee from working for the multitude of companies that were technically competitors of the employer but did not operate in its "specific market 'niche.'" Id.

Here, by contrast, the covenant contains no limitation as to the types of competitors to whom it applies, and SNS One has not set forth any specific facts to support its position that an industry-wide restriction is necessary in this case. The Court recognizes that SNS One, a subcontractor, has an interest in preventing employees from jumping ship to work for prime contractors such as SAIC.[5] A covenant that prevented this contingency would likely pass muster. The restriction at issue here is much broader, however. Accordingly, Hage is entitled to summary judgment.

## III. Conclusion

For the reasons stated above, the Court will, by separate Order of even date, GRANT Hage's Motion and DIRECT the Clerk to CLOSE the case.

Dated, this 11th of July, 2011.
/s/
Benson Everett Legg
United States District Judge

---

[5] Under Maryland law, covenants not-to-compete for employees who do not provide "unique services" may be applied "to prevent the future misuse of trade secrets, routes or lists of clients, or solicitation of customers." Becker v. Bailey, 268 Md. 93 (1973). In his motion, Hage extensively argued that he provided no unique services. In doing so, he thoroughly described Maryland's definition of "unique services" and his work for SNS One and SAIC. SNS One did not address this issue in its papers. Thus, the Court deems SNS One to have admitted that Hage did not provide unique services.

8